# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISAAC GARCIA HINOJOS,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No.  1:14-cv-01781-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL<br><br>(ECF Nos. 13, 14) |

## I.

## INTRODUCTION

Plaintiff Isaac Garcia Hinojos ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for supplemental security income pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from back pain, Hepatitis C Viral (HCV) infection with cirrhosis; mood disorder; anxiety disorder; and a history of drug addiction and recent alcohol abuse.  For the reasons set forth below, Plaintiff's Social Security appeal shall be denied.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge.  (See ECF Nos. 7, 8.)

1

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff previously filed a claim that was denied on April 17, 2008. (AR 60-70.) Plaintiff protectively filed the current Title XVI application for supplemental security income on May 2, 2011. (AR 72.) Plaintiff's applications were initially denied on September 1, 2011, and denied upon reconsideration on February 10, 2012. (AR 99-102, 106-110.) Plaintiff requested and received a hearing before Administrative Law Judge John Cusker ("the ALJ"). Plaintiff appeared for a hearing on April 3, 2012. (AR 26-58.) On May 10, 2013, the ALJ found that Plaintiff was not disabled. (AR 9-20.) The Appeals Council denied Plaintiff's request for review on September 26, 2014. (AR 1-3.)

### A.   Relevant Hearing Testimony

Plaintiff appeared with counsel and testified at a hearing on November 30, 2012. (AR 30-51.) Plaintiff was born on June 29, 1969, and was 43 years old on the date of the hearing. (AR 30.) Plaintiff is a widower. (AR 30.) Plaintiff testified that he went to school until the eighth grade. (AR 31.) However, Plaintiff stated in his application that he went to school through the eleventh grade and, upon questioning by the ALJ, stated that he went to school until he was 17 and made it to the eleventh grade. (AR 31-32.) Plaintiff is able to read and write more than his name. (AR 32.)

Plaintiff lives with his eighty year old mother. (AR 35.) Plaintiff does not drive and came to the hearing with his brother and mother. (AR 30-31.) Plaintiff watches his five year old grandson once in a while. (AR 35.) He watches him all day while the child's parents work. (AR 35.) They were living with Plaintiff and his mother but moved about four months prior to the hearing to a town about ten miles away. (AR 35.) Before they moved, he was watching his grandson a couple days a week. (AR 48.) Plaintiff cares for his mother. (AR 35.) He throws the trash out and stuff like that. (AR 35.) Plaintiff is able to handle his self-care. (AR 36.) His mother does all the cooking. (AR 36.) He does not do housework, his sister comes by and mops and sweeps. (AR 36.) Plaintiff helps his mother by sweeping and mopping for her. (AR 49.)

Plaintiff is 5 foot 5 inches tall and weighs 210 pounds. (AR 45.) Plaintiff does not have

any hobbies and spends his time in his room watching television. (AR 37.) Plaintiff gets up and walks when his back starts hurting. (AR 37.) Plaintiff sometimes goes shopping with his mother. (AR 36.) He does not go by himself because he does not want to socialize with bad people. (AR 50.) He gets irritated and mad. (AR 50.) Plaintiff worries that something bad is going to happen. (AR 50.)

Plaintiff has not worked since the early 90s. (AR 32.) Plaintiff has not done any work or volunteering since the denial of his previous claim for benefits. (AR 32.) He is unable to work due to back pain and mental problems. (AR 32-33.) Plaintiff takes medication for post-traumatic stress disorder and anxiety attacks. (AR 33.) Plaintiff has been taking methadone for seven or eight years due to a heroin addiction. (AR 33, 34-35.) Plaintiff also testified that he had a problem with alcohol abuse but has not had a drink in years. (AR 33.) The ALJ questioned Plaintiff about his counseling records that showed he had been drinking as recently as August. (AR 34.) Plaintiff stated he thought he "did go on like a little drinking spree or something like that." (AR 34.) About a year before that he was drinking for a couple days. (AR 49.)

Plaintiff has been diagnosed with Hepatitis C and cirrhosis of the liver and is not getting treatment. (AR 37-38.) The doctors talked about treating with interferon, but said it might be too late. (AR 39.) Plaintiff is taking medication that sometimes helps. (AR 41.) The medication makes him groggy. (AR 41.) The doctors told him to double his medication and it works, but not like Plaintiff thinks that it should. (AR 42.) Plaintiff has nausea and throws up all the time due to the Hepatitis. (AR 44.) Plaintiff only has a bowel movement every two days and has to strain a lot to go to the bathroom. (AR 45.) Plaintiff has stomach bloating. (AR 45.)

Plaintiff is able to tolerate being on his feet for 25 to 30 minutes and can lift 10 pounds. (AR 43-44.) When Plaintiff is watching television he lies down, then he will get up and walk around a bit, go into the backyard for a while and come back inside. (AR 44.) Plaintiff tries to follow the shows that he is watching on television, but also tries to sleep because he has difficulty sleeping. (AR 46-47.) Plaintiff has nightmares and is worried that something bad is going to happen. (AR 47.) Plaintiff gets up a lot during the night to make sure the heater and

stove are turned off.  (AR 47.)

**B.    ALJ Findings**

The ALJ made the following findings of fact and conclusions of law:

- Plaintiff has not engaged in substantial gainful activity since May 2, 2011, the date of the current application.
- Plaintiff has the following severe impairments: Hepatitis C Viral (HCV) infection with cirrhosis; mood disorder; anxiety disorder; and a history of drug addiction and recent alcohol abuse.
- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.
- Plaintiff has the residual functional capacity to perform medium work except that he can perform simple tasks with routine supervision with no public contact.
- Plaintiff has no relevant past work.
- Plaintiff was born on June 29, 1969, and was 41 years old when his application was filed which is defined as a younger individual.
- Plaintiff has a limited education and is able to communicate in English.
- Transferability of job skills is not an issue as the claimant does not have past relevant work.
- Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.
- Plaintiff has not been under a disability as defined in the Social Security Act since the date his application was filed.

(AR 14-19.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that he is unable "to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; Batson v. Commissioner of Social Sec. Admin, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006).  However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.

## DISCUSSION AND ANALYSIS

The only issue raised by Plaintiff in this appeal is that the ALJ erred by improperly rejecting the opinion of the examining physician, Dr. Roberts, in assessing his residual functional capacity.  Defendant replies that the ALJ properly evaluated and summarized the medical evidence and found that Dr. Roberts' findings were influenced by Plaintiff's reports of his condition that were not credible.

**A.   Comprehensive Psychiatric Medical Evaluation by Dr. Roberts**

On August 13, 2011, Plaintiff had a comprehensive psychiatric evaluation by Dr. Harold Roberts. (AR 285-290.)  Plaintiff's chief complaints were anxiety, panic attacks, and depression. (AR 285.)  Plaintiff reported that his wife and four of his children were killed in a house fire in 1994. (AR 286.)  Plaintiff stated that he is a religious man and has many friends. (AR 286.)  He reported nightmares on a regular basis, insomnia, constant fear, flashbacks during the day, and intrusive thoughts. (AR 285.)  Plaintiff reported that he stayed in his room and walked in the backyard once in a while. (AR 287.)  He takes lots of naps and his mother cooks and cleans for him. (AR 287.)

Dr. Roberts found that Plaintiff was cooperative with normal motor activity and good eye contact. (AR 287.)  Plaintiff's speech was within normal limits. (AR 287.)  Thought content was linear and non-bizarre. (AR 288.)  Plaintiff denied hallucinations, but stated that he is always afraid and sleeps with the lights on. (AR 288.)  Plaintiff stated that he sometimes hears his wife and children calling him and it causes him to cry, and become angry and mad. (AR

288.) Plaintiff's mood was depressed and his affect was congruent with his mood. (AR 288.) Plaintiff's intelligence was intact and attention was good. (AR 288.) He was alert and oriented. (AR 288.) Plaintiff was very anxious and shaking throughout the interview. (AR 288.) Plaintiff's memory was fair. His fund of knowledge, ability to perform basic calculations, abstract reasoning, judgment, and insight were good. (AR 288.) Plaintiff was unable to interpret proverbs. (AR 288.)

Dr. Roberts diagnosed major depressive disorder, moderate to severe; post traumatic stress disorder due to the death of his family; panic disorder with agoraphobia, and a Global Assessment of Functioning score of 60.[2] (AR 289.) Dr. Roberts opined that Plaintiff's functional level appeared to be adequate with the presence of mental health impairment. (AR 289.) He found that Plaintiff's functional impairment was related to issues of major depression, anxiety, panic attacks and post traumatic stress disorder. (AR 289.)

Dr. Roberts found that Plaintiff was not impaired in his ability to adequately perform one or two step simple repetitive or complex tasks. (AR 289.) Plaintiff was moderately limited in his ability to accept instruction from supervisors and interact with coworkers and the public as he continues to isolate. (AR 289.) Plaintiff's lack of motivation was quite low. (AR 289.) Plaintiff appeared markedly impaired in his ability to perform work activities without special or additional instruction. (AR 289.) Plaintiff's ability to perform work was very much dependent on his mental state and level of support. (AR 289.) Plaintiff was markedly impaired in his ability to maintain regular attendance in the workplace. (AR 289.) He had no income, and housing and transportation issues. (AR 290.) Plaintiff was markedly impaired in his ability to complete a normal workday and workweek without interruptions from his psychiatric conditions. (AR 290.) Plaintiff appeared to be highly anxious, experiencing panic attacks and severe

---

[2] "A Global Assessment of Functioning ("GAF") score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations." Cornelison v. Astrue, 2011 WL 6001698, at *4 n.6 (C.D. Cal. Nov. 30, 2011) (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM–IV"), at 32 (4th ed.2000)). "A GAF score in the range of 51–60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning ( e.g., few friends, conflicts with peers or coworkers)." Cornelison, 2011 WL 6001698, at 4 n.6 (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM–IV"), at 34).

depressive symptoms, and post traumatic stress disorder symptoms. (AR 290.) Plaintiff appeared markedly impaired in his ability to deal with the usual stress encountered in a competitive workplace. (AR 289.)

### B. The ALJ Provided Specific and Legitimate Reasons to Reject the Opinion of Dr. Roberts

The weight to be given to medical opinions depends upon whether the opinion is proffered by a treating, examining, or non-examining professional. See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). In general a treating physician's opinion is entitled to greater weight than that of a nontreating physician because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995) (citations omitted). If a treating physician's opinion is contradicted by another doctor, it may be rejected only for "specific and legitimate reasons" supported by substantial evidence in the record. Ryan v. Commissioner of Social Sec., 528 F.3d 1194, 1198 (9th Cir.) (quoting Bayless v. Barnhart, 427 F.3d 1121, 1216 (9th Cir. 2005)).

Similar to a treating physician, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. Lester, 81 F.3d at 831 (9th Cir. 1995). The ALJ need not accept a treating physician's opinion that is brief, conclusory, and unsupported by clinical findings. Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

#### 1. The ALJ Properly Considered that Dr. Roberts Opinion is Based on Plaintiff's Subjective Complaints Which Were Found Not Credible

The ALJ gave little weight to the opinion of Dr. Roberts. (AR 18.) The ALJ noted that Dr. Roberts "reported very few abnormal findings and apparently based his opinion on [Plaintiff's] subjective complaints which suggested he was homebound, and dependent on his mother." (AR 17.) However, the record shows that Plaintiff is not homebound or dependent on his mother. (AR 17.)

An ALJ can reject a physician's opinion that is premised on a claimant's subjective complaints that have been properly discounted. Fair v. Bowen, 885 F.2d 597, 605 (1989). Here,

1 the ALJ found that Dr. Roberts based his opinion on Plaintiff's subjective complaints. Dr.
2 Roberts found that Plaintiff continues to isolate. (AR 289.) Dr. Roberts diagnosed Plaintiff with
3 panic disorder with agoraphobia. Plaintiff told Dr. Roberts that he stayed in his room and
4 walked in the backyard once in a while. (AR 287.) While Plaintiff indicated that he rarely
5 leaves the house and is dependent on his mother, the ALJ properly considered the totality of the
6 record which indicates otherwise.

7 The ALJ noted that the record is wrought with inconsistencies regarding Plaintiff's
8 mental impairments that undermine the credibility of his allegations. (AR 17.) The ALJ noted
9 that while Dr. Roberts based his opinion on Plaintiff's allegations that he was homebound and
10 dependent on his mother, Plaintiff testified that he cares for his mother, and was providing for his
11 grandson until the child's parents moved away. (AR 17.)

12 On March 31, 2010, Plaintiff reported that he walks all over, "downtown, across town,
13 here and there." (AR 17, 254.) He helps his mom clean up by sweeping and cleaning up inside
14 the house. (AR 254.) He cleans up the yard. (AR 254.) In a function report completed May 31,
15 2011, Plaintiff stated that he sometimes prepares his own meals or his mother will prepare them.
16 (AR 183.) He reported that he prepares meals weekly. (AR 183.) However, Plaintiff's mother
17 reported that Plaintiff prepares food daily in the microwave. (AR 199.) He goes shopping once
18 a month with his mother. (AR 184.) Plaintiff has a friend that will come by once in a long while
19 to visit. (AR 17, 185.)

20 On October 27, 2011, Plaintiff reported to his counselor that he has not had a drink in
21 three weeks and has stopped hanging out with his drinking buddies. (AR 357.) On February 28,
22 2012, Plaintiff reported that he cares for his grandson while the child's parents work. (AR 356.)
23 A March 9, 2012, treatment record notes that Plaintiff is a homemaker and cares for his
24 grandson. (AR 355.) On July 31, 2012, Plaintiff told his counselor that when he feels like using
25 alcohol he calls his friend on the phone and they talk about it. (AR 354.) On August 17, 2012,
26 Plaintiff reported that his grandson had moved but he sees him once or twice a week. (AR 353.)
27 They have a lot of fun together and play catch or computer games. (AR 353.)

28 On August 28, 2012, the clinic notes state that Plaintiff was unable to dose because he

was registering on the breathalyzer.  (AR 352.)  Plaintiff admitted that he had started drinking again two to three weeks prior.  (AR 17, 352.)  On September 7, 2012, Plaintiff reported to his counselor that he used a condom every time that he is going to be intimate with a woman.  (AR 352; see also AR 353 ("Client stated that he always uses a condom when having sex with a woman.  Even if she says she is on the pill, client still uses a condom.").)  Plaintiff was seen on September 7, 2012, and reported that he had not had anything to drink for at least two weeks.  (AR 352.)

The ALJ found that Dr. Roberts' opinion was not credible because it was based on Plaintiff's subjective symptoms that were inconsistent with his activities of daily living.  (AR 18.)  Substantial evidence in the record supports that ALJ's finding that Dr. Roberts opinion is not credible to the extent that it is based upon Plaintiff's subjective complaints.

2. The ALJ Properly Considered that the Limitations Opined by Dr. Roberts Are Not Supported by the Record

While Plaintiff argues that Dr. Roberts opinion was based on his independent examination of Plaintiff, as the ALJ noted, Dr. Roberts reported very few abnormal findings.  (AR 17.)  Plaintiff's mood was depressed, but he was assessed a GAF of 60 which "indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers)."  Cornelison, 2011 WL 6001698, at 4 n.6.  He appeared anxious and was shaking throughout the interview.  (AR 288.)  Plaintiff was unable to interpret proverbs.  (AR 288.)

Plaintiff's functional level was found to be adequate and his impairment was due to major depression, anxiety, panic attacks, and post traumatic stress disorder.  (AR 289.)  The ALJ found that these impairments were based on Plaintiff's subjective complaints which are unsupported in the medical record.  The ALJ need not accept the opinion of any physician that is brief, conclusory, and unsupported by clinical findings.  Thomas, 278 F.3d at 957.

3. The ALJ Gave Greater Weight to the Opinion of the Agency Physician Which Was Consistent With Treatment Records

The ALJ found that Dr. Robert's opinion was inconsistent with the treating source

1   reports. (AR 18.) The treatment notes do not indicate significant impairment, but suggest that
2   lack of motivation is an issue. (AR 17.) Therefore, the ALJ accorded the most weight to the
3   opinion of Dr. Pearce, an agency physician which was consistent with the objective evidence.
4   (AR 18.)

5   The contrary opinion of a non-examining expert is not sufficient by itself to constitute a
6   specific, legitimate reason for rejecting a treating or examining physician's opinion, however, "it
7   may constitute substantial evidence when it is consistent with other independent evidence in the
8   record." Tonapetyan, 242 F.3d at 1149.

9   On August 31, 2011, Dr. Pearce prepared a psychiatric review technique and a mental
10  residual functional capacity assessment. (AR 296-309, 310-312.) Dr. Pearce found that Plaintiff
11  was markedly limited in his ability to understand and remember detailed instructions, ability to
12  carry out detailed instructions, and ability to interact appropriately with the general public, but
13  was not significantly limited in any other area. (AR 310-311.) Dr. Pearce found that Plaintiff
14  had mild restrictions of activities of daily living and moderate difficulty in maintaining social
15  functioning and difficulty in maintaining concentration, persistence and pace. (AR 306.) Dr.
16  Pearce also found that there are inconsistencies in the level of functioning as reported by Plaintiff
17  and as observed by Dr. Roberts. (AR 308.) Plaintiff's functional level was adequate, and based
18  on the medical evidence, he should be able to perform simple tasks. (AR 308.) Dr. Pearce
19  opined that Plaintiff can perform simple tasks with routine supervision, relate to supervisors and
20  peers on a superficial work basis and adapt to a work situation, but cannot relate to the general
21  public. (AR 312.) The ALJ gave the most weight to this opinion because it is consistent with
22  the medical evidence. (AR 18.)

23  Upon review of Plaintiff's treatment notes, while there are some general references to
24  anxiety, there are no indications in the treatment notes of depression or the severe limitations
25  found by Dr. Roberts. Conversely, the record has numerous notations that Plaintiff's mood was
26  good or positive. (AR 352, 353, 354, 356, 357, 358.) The record also indicates that Plaintiff was
27  hanging out with friends, caring for his grandson, and even considering getting a job. (AR 352,
28  353, 354, 355, 356, 357, 358.) The ALJ properly gave greater weight to the opinion of Dr.

Pearce which was supported by independent evidence in the record.

## V.
## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ provided specific and legitimate reasons for the weight given to Dr. Roberts opinion that are supported by substantial evidence in the record.  Accordingly,

IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED.  It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Isaac Garcia Hinojos.  The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **January 7, 2016**  

UNITED STATES MAGISTRATE JUDGE